Vanessa Molina (SBN 325672)
The Law Office of Vanessa Molina
120 Vantis Drive, Suite 300
Aliso Viejo, CA 92656
Email: vanessa@vanessamolinalaw.com
Phone: (619) 790-4300

Liannys Morgan, Esq.
L&O Immigration Legal USA
6910 N. Kendall Drive, # 202, Miami, FL 33156
Email: Lmorgan@immigrationlegalusa.com
Phone (305) 249-1090
*(Pro hac vice application forthcoming)*

Counsel for Petitioner

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| Dalbir LNU,<br><br>Petitioner,<br><br>v.<br><br>Fereti Semaia, Warden, of Adelanto Ice Processing Center; Ernesto Santacruz Jr. Director, Los Angeles Field Office, Immigration and Customs Enforcement; David Venturella, Acting Director of U.S. Immigration and Customs Enforcement; Daren K. Margolin, Director of the Executive Office for Immigration Review; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; and Todd Blanche, Acting Attorney General of the U.S. in their official capacities<br><br>Respondents. | **Case No.**<br><br>**PETITION FOR HABEAS CORPUS**<br><br>**A#226-113-132** |

## INTRODUCTION

1. **DALBIR LNU** is a citizen and national of India who entered the United States on or about July 12, 2024, at or near Mooers Forks, New York, where he was apprehended by immigration authorities. Following his apprehension, the Department of Homeland Security ("DHS") issued Form I-286, Notice of Custody Determination, pursuant to Section 236 of the Immigration and Nationality Act ("INA"), and subsequently released Petitioner on his own recognizance.

2. On July 12, 2024, DHS served Petitioner with a Notice to Appear (Form I-862), initiating removal proceedings. On October 31, 2024, Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal, which remains pending before the Immigration Court.

3. On or about August 17, 2026, while traveling to work, Petitioner was stopped by immigration authorities and asked to provide immigration documentation. Petitioner cooperated with the officers, did not flee or resist, and was subsequently taken into ICE custody. He is currently detained at the Adelanto ICE Processing Center in Adelanto, California.

4. Petitioner has no criminal record, no criminal convictions, and no history of violent or dangerous conduct. There is no evidence in the available record indicating that he poses a danger to the community.

5. Prior to his detention, Petitioner maintained stable employment as a Fleet Manager with NK Carries Inc., located at 10631 Banana Ave., Fontana, California 92337. His employer

provided a letter confirming his employment and expressing support for him. Petitioner also maintained an established residence at 11650 Cherry Ave., Fontana, California 92337.

6. Petitioner has developed meaningful ties to his community through his employment, religious participation, and relationships with friends and coworkers. Letters and affidavits from members of his religious community, friends, and coworkers attest to his good moral character, community involvement, and sense of responsibility.

7. Petitioner has a proposed release plan supported by an established residence and a sponsor willing to assist him following his release, including providing alternative housing if necessary. Documentation concerning his sponsor and financial support has been submitted. Petitioner is prepared to comply with all conditions of release and attend all future immigration proceedings.

8. Following his initial apprehension in July 2024, DHS exercised custody authority under INA § 236 and released Petitioner on his own recognizance. However, after his subsequent detention in August 2026, Petitioner sought bond and custody redetermination before the Immigration Court, and his request was denied for lack of jurisdiction. As a result, Petitioner has not obtained a substantive bond redetermination addressing whether his continued detention is necessary in light of his individual circumstances.

9. Petitioner contends that his continued detention without a meaningful individualized custody determination violates the Due Process Clause of the Fifth Amendment. He maintains that his lack of criminal history, established residence, employment history, community ties, sponsor support, and pending asylum application warrant individualized consideration of his eligibility for release.

10. Reasonable alternatives to continued detention may be available, including regular reporting requirements, supervision, electronic monitoring, and compliance with all Immigration Court and ICE appointments. Petitioner is willing to comply with any lawful conditions imposed upon his release.

11. Accordingly, Petitioner seeks a writ of habeas corpus directing Respondents to provide him with a prompt and meaningful individualized custody hearing before a neutral decisionmaker, at which the legal basis for his detention, his individual circumstances, and available alternatives to detention may be considered. In the alternative, Petitioner requests release under reasonable conditions and any other relief the Court deems just and proper.

12. Mr. LNU's present detention follows an interior arrest after approximately two years of government-authorized release. On July 12, 2024, DHS issued a Form I-286 expressly invoking INA § 236 and ordered Petitioner released on his own recognizance. The accompanying Notice to Appear classified Petitioner as an alien present in the United States who had not been admitted or paroled; DHS did not designate him as an "arriving alien." These contemporaneous records support Petitioner's position that DHS exercised custody authority under 8 U.S.C. § 1226(a).

13. On October 5, 2026, Immigration Judge Curtis White denied Petitioner's request for custody redetermination solely for lack of jurisdiction under Matter of Q. Li, 29 I. & N. Dec. 66 (BIA 2025). The order states that Petitioner "was apprehended near the border contemporaneous to unlawful entry." The Immigration Judge therefore did not reach the merits of Petitioner's request for release or make an individualized determination concerning danger to the community, risk of flight, or appropriate conditions of release.

14. Petitioner challenges the application of mandatory detention under 8 U.S.C. § 1225(b) to his present custody. Although his initial apprehension occurred near the border in July 2024, DHS expressly released him under INA § 236, and his current detention resulted from a separate interior arrest in California on August 17, 2026. The records submitted in the bond proceedings do not establish that his initial release was pursuant to a grant of humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), or that his present custody resulted from termination of such a grant.

15. In Rodriguez Vazquez v. Bostock, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026), the Ninth Circuit held that noncitizens present without admission who are apprehended in the interior of the United States are subject to the detention framework of 8 U.S.C. § 1226(a), rather than mandatory detention under § 1225(b)(2)(A). Petitioner contends that this framework governs his present detention following his interior rearrest and prior release expressly authorized under INA § 236. His original border apprehension does not, in his circumstances, justify denying him the custody procedures associated with § 1226(a).

16. Matter of Q. Li addressed detention following an apprehension while arriving in the United States and return to custody after termination of humanitarian parole. Petitioner's documented release on recognizance under INA § 236 presents a materially different release history. Petitioner contends that extending Q. Li to foreclose custody redetermination following his subsequent interior arrest is inconsistent with § 1226(a) and the Ninth Circuit's interpretation of the statutory detention framework.

17. This Petition challenges the statutory and constitutional legality of Petitioner's present detention and the categorical denial of an individualized custody determination. Petitioner does not seek review of the merits of his pending asylum application or a

discretionary determination setting a particular bond amount. He seeks judicial determination of the statute governing his custody and the procedures required before Respondents may continue his confinement.

18. Independently of his statutory claim, Petitioner's approximately two years of government-authorized release implicate a substantial liberty interest. The adequacy of the procedures used to revoke that liberty and continue his detention must be evaluated under the Due Process Clause, including the factors identified in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Those factors require consideration of Petitioner's interest in freedom from physical confinement, the risk of erroneous deprivation and the value of additional safeguards, and the government's interests and administrative burdens.

19. DHS submitted records alleging violations of Petitioner's monitoring and reporting requirements. Those allegations may bear on an individualized assessment of flight risk or appropriate release conditions, but they do not resolve the statutory authority governing his custody or substitute for a meaningful opportunity to contest the allegations before a neutral decisionmaker authorized to order release. The Immigration Judge's jurisdictional denial left those questions unresolved without a substantive custody redetermination.

20. Petitioner therefore requests a declaration that his present detention is governed by 8 U.S.C. § 1226(a) and an order requiring a prompt individualized custody hearing before a neutral decisionmaker authorized to order his release. Independently, Petitioner requests constitutionally adequate review of the revocation of his prior release and the necessity of his continued confinement. Petitioner seeks release under reasonable conditions if Respondents fail to provide the hearing required by this Court within the time prescribed, together with such other relief as the Court deems just and proper.

**JURISDICTION**

21. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.

22. This Court has subject matter jurisdiction under 28 U.S.C. § 2241. Federal habeas jurisdiction extends to constitutional and legal challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

23. Additionally, this court also possesses federal jurisdiction under 28 U.S.C. § 1331 (federal question). Jurisdiction is also supported by the Suspension Clause of the United States Constitution, Article I, § 9, cl. 2.

24. This Court has authority to grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

**VENUE**

25. Venue is proper in this Court because Mr. LNU is currently detained at the Adelanto ICE Processing Center in Adelanto, California, which is located within the Central District of California, Eastern Division. Mr. LNU's immediate custodian is located within this District, and Respondents are subject to this Court's jurisdiction.

**REQUESTS EXPEDITED CONSIDERATION UNDER 28 U.S.C. § 2243**

26. The Court must grant the petition for a writ of habeas corpus or issue an order to show cause ("OSC") to Respondents forthwith, unless it appears that Mr. LNU is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return within three days, unless for good cause additional time, not

exceeding twenty days, is allowed. Petitioner respectfully requests prompt issuance of an order to show cause and an expedited response schedule consistent with § 2243 and any applicable habeas rules.

27. Because habeas corpus is intended to provide a swift remedy for unlawful confinement, prompt adjudication is especially important where the petitioner remains detained. *See Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (recognizing that habeas proceedings require special consideration because the writ is intended to provide a "swift and imperative remedy" for unlawful restraint). Given the nature of this proceeding, Mr. LNU respectfully requests expedited consideration.

## PARTIES

28. Petitioner, DALBIR LNU is a native and citizen of India and is currently detained at the Adelanto ICE Processing Center in Adelanto, California. He is in the custody and under the control of Respondents and their agents.

29. Respondent, FERETI SEMAIA the Warden of the Adelanto ICE Processing Center, is the immediate physical custodian of Mr. LNU.

30. Respondent, ERNESTO SANTACRUZ, JR is the Field Office Director of the U.S. Immigration and Customs Enforcement Los Angeles Field Office, has authority over Mr. LNU's detention.

31. Respondent, DAVID VENTURELLA, is the Acting Director of ICE and is responsible for the agency's policies and practices related to detention.

32. Respondent , DAREN K. MARGOLIN is the Director of the Executive Office for Immigration Review ("EOIR"), the agency responsible for the administration of immigration courts.

33. Respondent, MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security is responsible for the administration and enforcement of the Immigration and Nationality Act ("INA") and oversees ICE.

34. Respondent, TODD BLANCHE is the Acting Attorney General of the United States oversees the Department of Justice, including EOIR, and has authority over immigration adjudications.

35. Each Respondent is sued in his or her official capacity as a custodian and/or policymaker responsible for Mr. LNU's continued detention.

## STATEMENT OF FACTS

36. Mr. LNU is a native and citizen of India. On or about July 12, 2024, he entered the United States near Mooers Forks, New York, and was apprehended by U.S. Border Patrol shortly thereafter. DHS's contemporaneous records identify his entry and apprehension as occurring near the United States–Canada border.

37. On July 12, 2024, DHS issued Petitioner a Form I-286, Notice of Custody Determination. The form expressly invoked INA § 236 and checked the boxes directing that Petitioner be released on his own recognizance. It also advised Petitioner that he could request immigration judge review of the custody determination. DHS's contemporaneous narrative states that he was released on recognizance because of humanitarian reasons and a lack of detention space.

38. On the same date, DHS personally served Petitioner with a Notice to Appear placing him in removal proceedings under INA § 240 and charging inadmissibility under INA § 212(a)(6)(A)(i). DHS checked the box identifying him as an alien present in the United States who had not been admitted or paroled. The box identifying him as an "arriving alien" was not checked.

39. Following his release, Petitioner lived in the United States for approximately two years before his present detention. He established a residence at 11650 Cherry Avenue, Apartment 3C, Fontana, California, and developed employment, religious, and community ties.

40. On October 31, 2024, Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal, with the Immigration Court. That application remains pending. USCIS subsequently issued him category C08 employment authorization valid from May 13, 2025, through May 12, 2030.

41. Before his detention, Petitioner worked for NK Carries Inc. His employer, Gautam Kumar, provided an affidavit describing Petitioner as hardworking, responsible, dependable, and trustworthy. Petitioner also submitted vehicle insurance records reflecting his established Fontana residence.

42. On August 17, 2026, while Petitioner was traveling to work in Fontana, ICE officers stopped his vehicle during an operation targeting another individual. According to DHS's Form I-213 narrative, officers initially believed that the driver matched the target's physical description. Petitioner identified himself and provided California identification and his employment authorization document.

43. DHS's narrative states that officers conducted records checks, identified alleged Alternatives to Detention ("ATD") violations, and arrested Petitioner. It further states that an I-200 administrative arrest warrant was subsequently issued and that Petitioner was taken into

custody without incident. Officers transported him to the ICE/ERO San Bernardino Sub-Office for processing.

44. Petitioner has remained detained since August 17, 2026, and is currently confined at the Adelanto ICE Processing Center in Adelanto, California. DHS's submitted records state that he has no criminal history and no final order of removal.

45. Petitioner requested bond and custody redetermination before the Adelanto Immigration Court. In support, he submitted his original custody determination, Notice to Appear, asylum filing records, identification and employment authorization, employer affidavit, residence documentation, sponsor materials, and letters concerning his religious participation and personal character.

46. On October 4, 2026, DHS submitted an evidence packet containing its arrest narrative, records of Petitioner's July 2024 apprehension and release, and ATD case comments. Those comments allege monitoring and reporting violations, including absence during a scheduled home visit and a tracker no longer calling in. DHS's arrest narrative also alleges travel outside an authorized monitoring zone. The submitted comments refer to underlying case notes and resolution details that are not included in the packet.

47. On October 5, 2026, Immigration Judge Curtis White denied Petitioner's request for custody redetermination for lack of jurisdiction under Matter of Q. Li, 29 I. & N. Dec. 66 (BIA 2025). The written order states that Petitioner "was apprehended near the border contemporaneous to unlawful entry." The order was electronically served on counsel on October 6, 2026.

48. The Immigration Judge's written order contains no individualized finding that Petitioner poses a danger to the community or a risk of flight. It does not adjudicate the alleged ATD violations or determine whether conditions of release could adequately address any

identified risk. Petitioner therefore remains confined without a substantive bond redetermination addressing the necessity of his continued detention.

49. Petitioner has a proposed release plan supported by his established residence and a United States citizen sponsor, Navneet Bhandari, who has offered housing, financial support, transportation, and assistance complying with Immigration Court hearings and ICE reporting requirements. His employer, religious community, friends, and professional associates have submitted letters supporting his character and community ties. Petitioner is prepared to comply with lawful conditions of release and attend all required proceedings.

50. His continued detention impairs his ability to gather evidence, communicate with counsel, and prepare his defense in the removal proceedings.

## LEGAL FRAMEWORK

51. The Immigration and Nationality Act establishes distinct statutory frameworks for immigration detention. Section 235(b), 8 U.S.C. § 1225(b), governs detention of certain applicants for admission, while § 236(a), 8 U.S.C. § 1226(a), authorizes arrest and detention pending a decision on removal and permits release on bond or conditional parole. Determining which provision governs Petitioner's present custody is therefore essential to determining the custody procedures available to him. See Jennings v. Rodriguez, 583 U.S. 281, 297–303 (2018).

52. Under § 1226(a), a noncitizen may be arrested and detained on an administrative warrant pending a decision on removal. Except where mandatory detention or another applicable restriction controls, the statute permits release on bond or conditional parole. Its implementing regulations provide for immigration judge review of DHS custody determinations before a removal order becomes administratively final. See 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1).

53. Section 1225(b), by contrast, requires detention of the applicants for admission covered by its provisions during the applicable proceedings, subject to DHS's statutory parole authority. Placement in regular removal proceedings under INA § 240 does not, standing alone, establish that detention is governed by § 1226(a). See Jennings, 583 U.S. at 297–303; Matter of Q. Li, 29 I. & N. Dec. 66, 69–70 (BIA 2025).

54. In Rodriguez Vazquez v. Bostock, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026), the Ninth Circuit held that noncitizens present without admission who are apprehended in the interior of the United States are subject to § 1226(a), rather than mandatory detention under § 1225(b)(2)(A). That decision supplies the governing circuit interpretation of the statutory distinction between detention associated with seeking entry and detention following an interior apprehension.

55. Matter of Q. Li held that an applicant for admission arrested and detained without a warrant while arriving in the United States, whether at or between ports of entry, remains subject to § 1225(b) after placement in removal proceedings. It further held that a person released from § 1225(b) custody on parole under § 1182(d)(5)(A) returns to that custody upon termination of parole. 29 I. & N. Dec. at 69–70. The decision also rejected the proposition that issuance of a warrant after a border arrest necessarily converts the governing detention authority to § 1226(a). Id. at 69 n.4.

56. Petitioner challenges the application of that framework to his present detention following a separate interior arrest after approximately two years of release expressly authorized under INA § 236. His argument rests on the circumstances of his present custody, DHS's contemporaneous custody determination, and Rodriguez Vazquez. Neither the designation on the Notice to Appear nor the form used to authorize release is independently

dispositive; the statutory question must be resolved under the governing law and the documented custody history.

57.

58. The Fifth Amendment's Due Process Clause applies to all persons within the United States, including noncitizens, regardless of whether their presence is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. *Id.* at 690.

59. Government-authorized conditional liberty may implicate a protected liberty interest even though release remains subject to restrictions. See Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Young v. Harper, 520 U.S. 143, 147–52 (1997). Although those decisions addressed release in the criminal justice context, their recognition of an interest in conditional liberty supports Petitioner's claim that his sustained release into the community required constitutionally adequate procedures before that liberty could be revoked.

60. The adequacy of procedural safeguards is evaluated under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), which considers the private interest affected, the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and the government's interest, including the burdens associated with additional procedures. Here, the relevant private interest is Petitioner's freedom from physical confinement following approximately two years of authorized release.

61. An individualized custody hearing would permit consideration of DHS's alleged monitoring violations, Petitioner's response, his current danger or flight risk, and available

conditions of release. DHS may have legitimate interests in enforcing supervision requirements and securing Petitioner's appearance. Those interests must be evaluated alongside the risk of erroneous confinement and the value of a meaningful opportunity to contest the grounds for continued detention.

62. The Immigration Judge's jurisdictional denial under Q. Li did not resolve Petitioner's constitutional challenge to the revocation of his prior release or produce an individualized determination concerning the necessity of continued confinement. Jennings rejected an interpretation of the detention statutes that implied periodic bond hearings, but did not decide the constitutional challenges to detention under those provisions. 583 U.S. at 312. Petitioner therefore presents his due process claim independently of his argument that § 1226(a) governs his custody.

63. Petitioner seeks a prompt custody hearing under § 1226(a) and, independently, the safeguards required by due process in the circumstances of his re-detention.

64. Mr. LNU requests restoration to his prior release status because his continued detention has not received constitutionally adequate individualized review. Alternatively, the Court should order a prompt hearing before a neutral decisionmaker at which Respondents bear the burden of proving, by clear and convincing evidence, that materially changed circumstances establish that detention is necessary because Mr. LNU presents a danger to the community or a flight risk and that no less restrictive alternative would adequately protect the government's interests.

## CLAIMS FOR RELIEF
## COUNT ONE
### Violation of Petitioner's Fifth Amendment Right to Due Process

65. The allegations in the above paragraphs are realleged and incorporated herein.

66. The Due Process Clause prohibits the government from depriving any person of liberty without adequate justification and procedural safeguards. There is no dispute that Respondents have deprived Mr. LNU of his liberty through continued detention.

67. Mr. LNU's re-detention and continued confinement without constitutionally adequate procedures violate the Due Process Clause of the Fifth Amendment. As a noncitizen physically present in the United States, Mr. LNU is entitled to the protections of the Due Process Clause. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

68. Freedom from physical confinement constitutes a fundamental liberty interest. *Id.* at 690. Government-authorized conditional liberty also constitutes a protected liberty interest that may not be revoked without constitutionally adequate procedures. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Young v. Harper*, 520 U.S. 143, 147–52 (1997).

69. On July 12, 2024, DHS expressly authorized Petitioner's release on his own recognizance through a Form I-286 invoking INA § 236. Petitioner thereafter lived in the community for approximately two years, established a residence, pursued his asylum application, obtained employment authorization, and developed employment and community ties.

70. Petitioner's sustained, government-authorized release created a substantial interest in continued liberty. The conditional nature of that release does not eliminate the need for constitutionally adequate procedures when the government revokes it. See Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Young v. Harper, 520 U.S. 143, 147–52 (1997).

71. On August 17, 2026, ICE arrested Petitioner during an interior enforcement operation in California and returned him to physical custody. DHS's arrest narrative states that

officers relied on records identifying alleged ATD violations. Petitioner remains detained at the Adelanto ICE Processing Center.

72. The alleged ATD violations do not, without individualized consideration, establish that Petitioner's continued detention is necessary. Petitioner must have a meaningful opportunity to contest the allegations and present evidence concerning whether reasonable conditions of release would adequately address any identified risk.

73. Respondents' continued detention of Mr. LNU without constitutionally adequate procedures violates the Fifth Amendment. Although DHS has alleged violations of supervision requirements, no neutral decisionmaker has determined whether those allegations justify continued confinement, whether Mr. LNU presently poses a danger to the community or a risk of flight, or whether alternatives to detention would adequately address any established risk.

74. Under the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), Petitioner's substantial liberty interest, the risk of erroneous confinement, and the value of individualized review require constitutionally adequate procedures to determine whether his continued detention is justified. The Immigration Judge's denial solely for lack of jurisdiction did not provide that review.

75. Under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), Petitioner's substantial interest in physical liberty must be weighed against the risk of erroneous deprivation, the value of additional procedural safeguards, and the government's interests. The risk of error is substantial where alleged supervision violations result in continued confinement without an individualized hearing addressing their factual basis and their significance to the need for detention.

76. Additional safeguards would permit Petitioner to respond to DHS's allegations and present evidence concerning his residence, employment, sponsor support, community ties, and

proposed conditions of release. A neutral decisionmaker could then determine whether continued detention is justified and whether supervision or other reasonable conditions would adequately address any established risk. The government's interests in enforcing supervision requirements and securing attendance at proceedings can be evaluated through that process.

77. Under these circumstances, Respondents' continued confinement of Petitioner without constitutionally adequate individualized review violates the Due Process Clause. Even assuming that immediate custody was permissible pending review of the alleged violations, that initial action does not resolve whether his continued detention without a meaningful custody hearing is constitutionally adequate.

78. Petitioner requests an order requiring a prompt hearing before a neutral decisionmaker authorized to order release, with adequate notice of the grounds asserted for continued detention and a meaningful opportunity to examine and contest the supporting evidence. Because this claim concerns revocation of sustained government-authorized liberty, Petitioner requests that Respondents bear the burden of justifying continued confinement by clear and convincing evidence, including consideration of whether reasonable conditions would adequately address any established danger or flight risk. Petitioner further requests release under reasonable conditions if Respondents fail to provide the constitutionally adequate hearing ordered by this Court within the prescribed time.

79. Respondents have deprived Mr. LNU of his liberty interest protected by the Fifth Amendment by re-detaining him on August 17, 2026, and continuing his confinement without constitutionally adequate process.

80. For these reasons, Mr. LNU's detention violates the Due Process Clause of the Fifth Amendment.

**COUNT TWO**
**Violation of the Immigration and Nationality Act**

81. Mr. LNU re-alleges and incorporates by reference the preceding paragraphs.

82. Petitioner's present detention is governed by 8 U.S.C. § 1226(a). DHS expressly invoked INA § 236 when it released Petitioner on his own recognizance on July 12, 2024. His present confinement resulted from a separate interior arrest in California on August 17, 2026, after approximately two years of government-authorized release.

83. Mr. LNU is not subject to mandatory detention under 8 U.S.C. § 1226(c) because he has no qualifying criminal history. He is not detained under 8 U.S.C. § 1231 because no administratively final order of removal exists. Nor have Respondents asserted that he is subject to expedited-removal detention under 8 U.S.C. § 1225(b)(1).

84. In Rodriguez Vazquez v. Bostock, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026), the Ninth Circuit held that noncitizens present without admission who are apprehended in the interior of the United States are subject to the detention framework of § 1226, rather than mandatory detention under § 1225(b)(2)(A). Petitioner's present interior detention, following his documented release under INA § 236, falls within that framework.

85. Respondents have nevertheless treated Petitioner as ineligible for custody redetermination under Matter of Q. Li, 29 I. & N. Dec. 66 (BIA 2025), based on his original border apprehension. Petitioner challenges that application of Q. Li to his subsequent interior rearrest. His documented release on recognizance under INA § 236 differs from the humanitarian parole and subsequent parole termination addressed in Q. Li. Mr. LNU contends that his present detention following an interior rearrest, considered together with his documented release under INA § 236, is governed by § 1226(a) under that statutory framework.

86. Section 1226(a)(2) permits release on bond or conditional parole, and its implementing regulations provide for immigration judge review of custody determinations, subject to applicable restrictions. See 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1). Respondents' application of § 1225(b) has denied Petitioner access to those procedures. The Immigration Judge denied his request solely for lack of jurisdiction and made no substantive determination concerning his eligibility for release.

87. DHS's allegations concerning ATD violations do not independently establish mandatory detention under § 1225(b). Those allegations may be considered in an individualized custody determination under § 1226(a), together with Petitioner's response and evidence concerning danger, flight risk, and appropriate conditions of release. They do not justify categorically withholding the custody procedures available under the governing statute.

88. Accordingly, Mr. LNU's continued detention under this framework is contrary to and in violation of the INA and must be set aside.

**COUNT THREE**
**REQUEST FOR STAY OF REMOVAL**

89. Mr. LNU re-alleges and incorporates by reference the preceding paragraphs.

90. Absent relief from this Court, Mr. LNU faces a risk of removal before he has had a meaningful opportunity to challenge the legality of his detention.

91. Such removal would result in irreparable harm by effectively mooting his claims and depriving him of access to judicial review. Mr. LNU seeks to preserve meaningful review of the statutory and constitutional claims presented in this Petition.

92. A stay of removal is necessary to preserve this Court's jurisdiction and to ensure that Mr. LNU's statutory and constitutional claims are fully and fairly adjudicated. This request seeks narrowly tailored interim relief only insofar as necessary and legally authorized to protect this Court's adjudication of his detention claims. He does not seek through this count a determination of his removability or entitlement to asylum, or review of any future removal order.

93. Accordingly, Mr. LNU respectfully requests that this Court grant a stay of removal pending resolution of this petition.

**COUNT FOUR**
**SUSPENSION CLAUSE CLAIM**

94. Mr. LNU realleges and incorporates by reference the preceding paragraphs.

95. Petitioner challenges the legality of his present physical confinement and does not seek review of a final order of removal or the merits of his ongoing removal proceedings. This Court therefore retains jurisdiction under 28 U.S.C. § 2241 to adjudicate his statutory and constitutional challenges to detention. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006).

96. The Suspension Clause protects the availability of habeas corpus as a means of testing the legality of executive detention. U.S. Const. art. I, § 9, cl. 2; Boumediene v. Bush, 553 U.S. 723, 745 (2008). The Immigration Judge denied Mr. LNU's request for custody redetermination for lack of jurisdiction. That ruling did not adjudicate his constitutional challenges to continued detention or eliminate his right to seek judicial review through habeas corpus.

97. In determining whether the Suspension Clause applies, courts consider: (1) the citizenship and status of the detainee and the adequacy of the process used to determine that status; (2) the nature of the site of apprehension and detention; and (3) the practical obstacles to resolving the detainee's entitlement to the writ. Id. at 766.

98. Mr. LNU satisfies these factors. He was released by DHS in July 2024, lived in the community for approximately two years, and was subsequently arrested in the interior of the United States. He remains physically confined within the United States and seeks relief concerning that confinement. His detention claims therefore concern the traditional function of habeas corpus as a remedy for allegedly unlawful executive custody.

99. If the applicable statutes were construed to eliminate habeas review of Mr. LNU's detention, an adequate and effective substitute would be constitutionally necessary. See Boumediene, 553 U.S. at 771. The availability of administrative proceedings concerning removability or asylum does not, by itself, establish an adequate substitute for judicial review of the distinct statutory and constitutional challenges to detention presented here.

100. There are no meaningful practical barriers to this Court exercising jurisdiction and adjudicating the legality of Mr. LNU's detention.

101. Mr. LNU pleads this claim in the alternative, to the extent Respondents contend that § 1252 or another statutory provision forecloses judicial review of his detention claims.

102. Accordingly, any interpretation of § 1252 that would bar this Court's review would violate the Suspension Clause as applied to Mr. LNU.

## REQUEST FOR PRELIMINARY INJUCTIVE RELIEF

103. Mr. LNU re-alleges and incorporates by reference the preceding paragraphs.

104. This Court has the authority to grant injunctive relief, including temporary restraining orders and preliminary injunctions.

105. Preliminary injunctive relief is warranted where a petitioner establishes that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm without preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction serves the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, relief may also issue when serious questions going to the merits are raised and the balance of hardships tips sharply in the petitioner's favor, provided the remaining *Winter* factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). To the extent the requested relief is mandatory, Petitioner must demonstrate that the law and facts clearly favor his position. Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

106. Mr. LNU is likely to succeed on his statutory and constitutional detention claims. DHS expressly released him under INA § 236 in July 2024, and his present detention resulted from a separate interior arrest approximately two years later. His statutory claim is supported by Rodriguez Vazquez v. Bostock, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026). Independently, his due process claim challenges the continuation of physical confinement following sustained government-authorized release without meaningful individualized custody review. The Immigration Judge denied custody redetermination solely for lack of jurisdiction under Matter of Q. Li and did not adjudicate danger, flight risk, the alleged ATD violations, or appropriate release conditions. Petitioner submits that the documented custody history and governing law clearly favor a prompt individualized custody hearing.

107. Mr. LNU suffers irreparable harm each day he remains physically confined without constitutionally adequate process. The loss of constitutional freedoms, even for a limited period, constitutes irreparable injury. His detention also restricts his ability to communicate with counsel, gather evidence, maintain family and community relationships, and prepare his defense in the removal proceedings.

108. The balance of equities and the public interest favor relief. Respondents have no legitimate interest in maintaining detention through procedures that violate the Constitution, while Mr. LNU has a fundamental interest in freedom from unjustified physical confinement. The public interest is served by requiring the government to comply with the Constitution and federal law.

109. Accordingly, this Court should grant appropriate injunctive relief to prevent continued unlawful detention.

**PRAYER FOR RELIEF**

110. **WHEREFORE**, Mr. LNU respectfully requests that this Court:

(1) Exercise jurisdiction over this matter pursuant to 28 U.S.C. § 2241;

(2) Issue an Order to Show Cause directing Respondents to demonstrate why the writ should not be granted, consistent with 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases;

(3) Order Respondents to produce all records material to Mr. LNU's custody and re-detention, including the Notice to Appear and proof of service; any administrative warrant or Form I-200; custody determinations; documents authorizing, modifying, or revoking his release; the supervision requirements and underlying records

supporting the alleged ATD violations; and the filings, exhibits, transcript or recording, and order from the bond proceedings;

(4) Declare that Petitioner's present detention is governed by 8 U.S.C. § 1226(a) and that categorically denying him access to custody redetermination under that provision violates the INA;

(5) Declare that Mr. LNU's re-detention and continued detention without constitutionally adequate notice and a meaningful opportunity to contest the factual and legal bases for his detention violate the Due Process Clause of the Fifth Amendment;

(6) Enjoin Respondents from transferring Mr. LNU outside the Central District of California while this action remains pending without prior authorization from this Court or, at minimum, without providing the Court and Petitioner's counsel at least seventy-two hours' written notice, except in a documented medical emergency;

(7) Grant the petition for a writ of habeas corpus and order Mr. LNU's immediate release under reasonable conditions of supervision;

(8) Enjoin Respondents from re-detaining Petitioner without constitutionally adequate notice and a pre-deprivation hearing before a neutral decisionmaker, except upon a showing of genuine exigent circumstances;

(9) In the alternative, order Respondents to provide Mr. LNU with a prompt and meaningful individualized custody determination before a neutral decisionmaker possessing authority to order his release, at which Respondents bear the burden of

proving by clear and convincing evidence that Petitioner presents a danger to the community or a flight risk and that no less restrictive alternative to detention would reasonably mitigate any identified risk;

(10) Pending final adjudication of this Petition, enter preliminary injunctive relief ordering Petitioner's release or, alternatively, requiring the prompt individualized custody hearing described above;

(11) Retain jurisdiction as necessary to enforce compliance with this Court's orders;

(12) Award Mr. LNU attorney's fees and costs under the Equal Access to Justice Act (EAJA), as amended, 28 U.S.C. § 2412, and on any other basis justified under law;

(13) Stay Mr. LNU's removal pending adjudication of this Petition, to the extent within this Court's jurisdiction and necessary and legally authorized to preserve meaningful review of his detention claims;

(14) Grant such other and further relief as this Court deems just and proper.

**PRAYER FOR EXPEDITED CONSIDERATION**

Pursuant to 28 U.S.C. § 2243, Mr. LNU respectfully requests expedited consideration of this petition. Each day of continued detention constitutes an ongoing deprivation of liberty without adequate legal process and results in irreparable harm. Prompt judicial intervention is necessary to protect Mr. LNU's constitutional rights.

Date: October 16, 2026.

**Respectfully Submitted,**

/s/ *Vanessa Molina*
Vanessa Molina (SBN 325672)
The Law Office of Vanessa Molina
120 Vantis Drive, Suite 300
Aliso Viejo, CA 92656Phone: (619) 790-4300
Email: vanessa@vanessamolinalaw.com

Liannys Morgan, Esq.
L&O Immigration Legal USA
6910 N. Kendall Drive, # 202, Miami, FL 33156
Email: Lmorgan@immigrationlegalusa.com
Phone (305) 249-1090
*(Pro hac vice application forthcoming)*